# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RANDY POOKEY SMITH,

        Defendant-Appellant.

UNPUBLISHED
February 24, 2015

No. 318205
Kalamazoo Circuit Court
LC No. 2012-001861-FC

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Defendant, Randy Pookey Smith, was convicted by a jury of felony murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; and conspiracy to commit armed robbery, MCL 750.157a; MCL 750.529. The trial court sentenced defendant to life imprisonment without eligibility for parole on his felony murder conviction, and life imprisonment on his armed robbery and conspiracy convictions. He appeals as of right, and we affirm.

## I. PERTINENT FACTS

Defendant's convictions arise out of the October 3, 2010, shooting death of Joseph Salib. Defendant lived on the same street as the victim. The prosecution presented evidence to establish that approximately two weeks before the victim's death, defendant asked two acquaintances if they would assist him in robbing the victim, who was a known drug dealer; both men refused. Defendant subsequently told one of the men, Ricky Dixon, that he had recruited an individual named Doug Davis to assist him in the robbery. Dixon told defendant not to bring Doug, because Doug would likely kill the victim. Despite this warning, Dixon saw defendant with Doug on October 3, 2010, the night the victim was killed. Telephone records showed that there were several telephone calls on the day of the murder, including a "flurry of phone calls" at approximately the same time the shooting occurred, between Doug's cellular telephone number and a cellular telephone that defendant shared with another individual.

It is undisputed that on the evening of October 3, 2010, defendant was at the victim's house in the time frame leading up to the assault, including hanging out by a bonfire in the victim's backyard. At some point that evening, defendant approached an individual who lived down the street from where the shooting occurred and asked that person if he had a gun because defendant's friend was being robbed. The individual did not give defendant a gun, and

-1-

defendant walked away. Shortly thereafter, the individual heard gunshots emanating from the direction toward which defendant went.

Jolanta Meriweather, the victim's girlfriend, arrived at the victim's house shortly after the shooting. When she pulled into the victim's driveway, defendant asked her to telephone 911, but did not indicate why. Meriweather heard defendant say that the victim had been shot, then heard defendant say three times to the victim, who was clinging to life, "I didn't mean for it to go down like that." Upon Meriweather's insistence, defendant attempted to drag the victim into her car in an effort to bring him to the hospital.

Responding to a 911 call, police officers arrived at the victim's home and found defendant and Meriweather attempting to put the victim in Meriweather's vehicle. At the time, the victim's ankles were taped together with duct tape, and one of his wrists was wrapped in duct tape as well. Officers were unable to revive the victim, and he died shortly thereafter.

When interviewed by police officers, defendant stated that he had been at the victim's house for a backyard bonfire when a masked individual approached, pointed a handgun at his head, and ordered him to go inside, where the victim was. Once inside, defendant became nervous and ran out the door, eluding the gunman. Defendant maintained that he hid in the bushes outside the house, and after hearing gunshots and seeing the masked man leave, went inside to check on the victim. Defendant did not call the police because he did not have a cellular telephone.

Several witnesses testified about their contact with defendant after the victim's killing. One witness recalled that, on the morning after the killing, defendant informed her that the victim had died, and that he said either "I didn't mean for it to happen this way," or "I never meant it to happen this way." The witness also reported that defendant told her that "they" made him duct tape the victim's hands together. Dixon also saw defendant after the shooting. According to Dixon, defendant told him that he should have heeded Dixon's warning that Doug would kill the victim. Another witness testified that he heard defendant and Doug talking about a robbery that "went bad."

Alan Davis testified that he spoke with defendant after the victim's death and that defendant asked him where he could sell several gold and diamond rings. Alan testified that defendant told him he had set up a robbery with Doug; defendant stated that Doug was the wrong person to use because he ended up killing the victim. Alan recalled that defendant told him that he and Doug were supposed to get drugs and money from the robbery; however, defendant indicated that he did not receive as much as he thought he should have from Doug. In addition, defendant told Alan that it was not his plan for the victim to get shot; he believed that the victim was not the type of person who would have fought back during the robbery.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges the sufficiency of the evidence presented to support each of his convictions. We review challenges to the sufficiency of the evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). In reviewing sufficiency of the evidence, this Court views the evidence in a light most favorable to the prosecution to determine

whether the evidence was sufficient to enable a rational jury to find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and all reasonable inferences drawn therefrom constitute satisfactory proof of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

## A. ARMED ROBBERY

A defendant is guilty of armed robbery if, while in possession of a dangerous weapon, MCL 750.529, and "in the course of committing a larceny of any money or other property that may be the subject of larceny, [the defendant] uses force or violence against any person who is present, or . . . assaults or puts the person in fear." MCL 750.530(1). A defendant convicted of armed robbery must have the specific intent to permanently deprive the owner of his property. *People v King*, 210 Mich App 425, 428; 534 NW2d 534 (1995).

The prosecution charged defendant under an aiding and abetting theory. The elements of aiding and abetting are:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Plunkett*, 485 Mich 50, 61; 780 NW2d 280 (2010) (citation and quotation omitted).]

There was sufficient evidence for a rational jury to find defendant guilty of armed robbery on an aiding and abetting theory. The evidence showed that defendant recruited Doug to help him rob the victim. A police officer testified that the victim's ankles were duct-taped together. Alan testified that, after the robbery, defendant asked where he could sell gold and diamond rings. Alan also testified that defendant stated that he did not receive as much as he should have after the robbery with Doug. Finally, the evidence showed that a gun was used in the commission of the crime based on the bullet wounds found on the victim. Viewing this evidence in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction of armed robbery on an aiding and abetting theory.

## B. CONSPIRACY TO COMMIT ARMED ROBBERY

Conspiracy to commit armed robbery requires proof of "both the intent to combine with others and the intent to accomplish the illegal objective"—in this case, armed robbery. *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). Direct proof of an agreement is not required; rather, proof of a conspiracy may be derived from the "circumstances, acts, and conduct of the parties." *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997).

As noted above, the evidence showed that defendant recruited Doug to assist him in committing an armed robbery after others turned down defendant's request to participate in the robbery. Further, after the offense, defendant told witnesses that he recruited Doug to commit an

armed robbery, and that he regretted that choice because Doug killed the victim. Defendant and Doug were seen together on the night of the offense. Moreover, a detective testified regarding numerous telephone calls made around the time of the offense between Doug and a cellular telephone that defendant was allowed to use. Viewing this evidence in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction for conspiracy to commit armed robbery.

## C. FELONY MURDER

The prosecution charged defendant with felony murder under an aiding and abetting theory, with the predicate felony being armed robbery. To establish guilt of felony murder on an aiding and abetting theory, the prosecutor must establish that defendant:

> (1) performed acts or gave encouragement that assisted in the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Carines*, 460 Mich at 755.]

Felony murder requires a showing of malice. *Id.* In order to satisfy the malice requirement of felony murder, "the prosecution must show that the aider and abettor either intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm." *Id.* at 140-141. In addition, "if an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with wanton and willful disregard sufficient to support a finding of malice." *Id.* (quotation marks omitted).

The parties stipulated to the fact that the victim was killed on the date of the offense after suffering gunshot wounds to his chest and abdomen. The evidence and reasonable inferences supported a finding that Doug killed the victim. Because "[a] jury may infer that the defendant aided and abetted the killing by participating in the underlying offense," *People v Bulls*, 262 Mich App 618, 625; 687 NW2d 159 (2004), the evidence was sufficient to show that defendant aided and abetted the killing on the basis of his involvement in the armed robbery. Concerning malice, the evidence showed that defendant was warned that Doug would likely kill the victim, but he continued with his plan regardless. The evidence also showed that, before the victim was shot, defendant asked a neighbor for a gun, but he was not given one. Two witnesses testified that after the victim died, they heard defendant say that he "never meant for it to happen this way." Thus, the evidence supported a finding that, even though defendant did not intend the victim's death, he " 'intended to do an act [armed robbery] in obvious disregard of life-endangering consequences,' thus evidencing his malicious intent[.]" *Id.*, quoting *People v Goecke*, 457 Mich 442, 466; 579 NW2d 868 (1998) (internal citation omitted; alteration omitted). Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to convict defendant of felony murder.

With regard to all of his convictions, defendant argues that the evidence of his guilt was not credible because several witnesses testified pursuant to plea deals. However, this Court will not interfere with the jury's credibility determinations, *Wolfe*, 440 Mich at 514-515, and, when reviewing claims of sufficiency of the evidence, we must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## III. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor committed prosecutorial misconduct by eliciting improper opinion testimony from three detectives and by making a civic duty argument. He also argues that his trial counsel was ineffective for failing to object to these alleged errors. We generally review issues of prosecutorial misconduct de novo. *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). We decide issues on a case-by-case basis by reviewing the pertinent part of the record and evaluating the prosecutor's conduct in context. *Id.* However, because defendant failed to preserve this issue by objecting below, we review the prosecutor's conduct for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* However, because this Court denied defendant's request for a *Ginther*[1] hearing on this claim, our review is limited to mistakes apparent on the lower court record. *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998).

For a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different. *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). Counsel's performance should be evaluated from his or her perspective at the time of the alleged error, *People v Grant*, 470 Mich 477, 487; 684 NW2d 686 (2004), and a defendant must overcome a strong presumption that counsel's performance was sound trial strategy, *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

## A. OPINION TESTIMONY

Defendant first contends that the testimony of three detectives was improper because the detectives gave expert opinion testimony without being qualified as expert witnesses. See MRE 702. He contends that it was improper for the prosecutor to knowingly offer this testimony in violation of MRE 702. After reviewing the challenged testimony, we do not agree with defendant; none of the detectives provided expert testimony, and the prosecution did not proffer their respective testimony as expert testimony. Instead, the detectives offered testimony as lay

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

witnesses on matters that were rationally based on their respective perceptions and observations; they did not offer opinions that were dependent on scientific, technical, or other specialized knowledge. See MRE 701; MRE 702; *People v McLaughlin*, 258 Mich App 635, 657-659; 672 NW2d 860 (2003).

More significantly, however, defendant argues that the detectives' testimony was improper because each opined on defendant's guilt in response to questions posed by the prosecutor that were designed to elicit such opinions. "A witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). However, police officers do not offer improper opinion testimony when explaining, among other matters, the steps of the investigation and how the investigation came to focus on the defendant, that certain statements by the defendant were unreasonable, given the circumstances and the perceptions of the officers, or that the defendant's statements led the officers to believe that "something was afoot[.]" *Id.* at 82-83.

Here, some of the challenged testimony was proper, as it concerned how the detectives came to treat defendant as a suspect, rather than a mere witness, given defendant's statements during interviews. See *id.* However, some of the challenged testimony by the detectives came dangerously close to crossing, and at times may have crossed, the line that separates improper opinion testimony about guilt and proper testimony explaining the criminal investigation. Assuming without deciding that the testimony and the prosecutor's questions preceding the testimony were improper, we find that defendant cannot establish plain error requiring reversal, given the strength of the properly admitted evidence in this case. As noted, the prosecution presented testimony from witnesses who stated that defendant discussed the robbery with them, indicating that he planned to perpetrate the robbery with Doug, and then later expressed regret over choosing Doug for the robbery because Doug had shot the victim. One witness warned defendant that Doug would kill the victim, but defendant proceeded nonetheless. Further, a witness testified that defendant later bemoaned the fact that he did not receive as much from the robbery as he had originally hoped. In addition, a witness recalled seeing defendant and Doug together before the robbery, and there was no dispute that defendant was at the victim's home on the evening of the robbery and shooting. And, we note that the prosecution did not emphasize the challenged comments in arguing that the jury should find defendant guilty of the above offenses.

Finally, we note that the harm caused by such improper questions and testimony could have been alleviated by a timely request for a curative instruction. See *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008) (explaining that, where a claim of prosecutorial error is not preserved by a contemporaneous objection, this Court will not reverse the defendant's convictions if the error could have been cured by a timely request for a curative instruction). Furthermore, the trial court instructed the jury that it alone was to decide the facts in the case and render a verdict. Thus, even assuming the existence of an error that was clear or obvious, defendant is not entitled to relief because he cannot establish the prejudice prong of plain error review, "i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. For that reason, we also find that, even assuming trial counsel's performance in failing to challenge the opinion testimony was objectively unreasonable, defendant is not entitled to relief on his attendant claim of ineffective assistance of counsel

because there is not a reasonable probability of a different outcome. See *Swain*, 288 Mich App at 643.

Defendant alternatively argues that the detectives' testimony was improper because their fact testimony was not separated from their opinion testimony, and a cautionary instruction was not provided to alleviate confusion. Defendant relies on *United States v Lopez-Medina*, 461 F 3d 724, 743-745 (CA 6, 2006). *Lopez-Medina*, however, involved a police officer testifying in a dual capacity as a fact witness and an expert witness. *Id.* Because the detectives did not testify as expert witnesses, *Lopez-Medina* does not apply to this case, and a cautionary instruction was not required.

## B. CIVIC DUTY ARGUMENT

Defendant next argues that the prosecutor improperly made civic duty arguments in his opening statement and closing argument. Although prosecutors are "accorded great latitude regarding their arguments and conduct[,]" a prosecutor may not make a civic duty argument that appeals to the fears and prejudices of the jury. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation and citation omitted). By doing so, the prosecutor improperly injects issues broader than the guilt or innocence of the defendant. *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003).

The challenged remarks are as follows:

*Opening Statement:* At the end of the proofs I'm going to ask you, not just to find the defendant guilty, but tell him he's guilty. Tell him Joe Salib died, because you set this whole thing up and you worked on it with other people to kill him during the armed robbery. You did do an armed robbery, and we're not going to stand for it, and we certainly aren't going to allow people to go out there and plan armed robberies to kill your friends, even if the guys [sic] a drug dealer. Even if he's a drug dealer, he does not deserve to be tied up, pants down, gurgling and dying in front of his kids.

*Closing Argument:* Ladies and Gentlemen, he's guilty of [Count] I. He's guilty of [Count] II. He's guilty of Count III. People ask that you come back, walk through the door, look at him and say as citizens of this community you are guilty of killing and being a part of killing Joseph Salib, in the city, in 2010.

Neither of the challenged remarks constituted an improper civic duty argument. Viewed in context, each of the challenged remarks was merely a summation of the prosecutor's argument. After the prosecutor discussed the evidence to be produced or that was produced at trial, the prosecutor asked the jury to find defendant guilty. Prosecutors are not required to argue "in the blandest of all possible terms[,]" *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996), and may ask the jury to convict on the basis of the evidence presented at trial, see *Bahoda*, 448 Mich at 284-285. Further, any minimal prejudice was cured by the trial court's instruction that the lawyers' arguments were not evidence. *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). Moreover, because these challenged remarks were proper, defendant's argument that counsel was ineffective for failing to object was also without merit. See *id.* at 457 (stating that counsel cannot be ineffective for failing to make a futile objection).

## IV.  JURY INSTRUCTIONS

Finally, defendant argues that his counsel was ineffective for failing to request a jury instruction on the lesser-included offenses of second-degree murder and manslaughter.  Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law.  *LeBlanc*, 465 Mich at 579.  Because this Court denied defendant's request for a *Ginther* hearing on this claim, our review is limited to mistakes apparent on the record.  *Fike*, 228 Mich App at 181.

In this case, the jury asked during deliberations if it could consider lesser offenses, although the jury did not specify on which charge.  The decision to request an instruction on a lesser-included offense is a matter of trial strategy.  See *People v Sardy*, 216 Mich App 111, 116; 549 NW2d 23 (1996).  In this case, the defense theory, evident from counsel's opening statement and closing argument, appeared to be that defendant was not involved at all in the victim's killing.  In other words, defense counsel utilized an "all-or-nothing" approach.  This theory was consistent with defendant's statements to police officers.  Had counsel requested an instruction on lesser-included offenses, counsel would have contradicted the only theory of defense.  Counsel is not rendered ineffective for using a trial strategy that is ultimately unsuccessful.  *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).  Defendant cannot overcome the presumption that counsel's performance was sound trial strategy.  *Toma*, 462 Mich at 302.

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher