PEOPLE v BULLS

Docket No. 242164. Submitted November 5, 2003, at Lansing. Decided
   June 29, 2004, at 9:00 A.M. Leave to appeal sought.
   Jabbar P. Bulls was convicted by a jury in the Genesee Circuit Court,
      Robert M. Ransom, J., of felony murder, assault with intent to rob
      while armed, and possession of a firearm during the commission of
      a felony. The defendant appealed.

   The Court of Appeals *held*:

   1. There was sufficient evidence to convict the defendant of
felony murder under an aiding and abetting theory. The defendant
admitted that there was sufficient evidence to show that he had
the intent to commit the underlying felony, armed robbery. The
record established that the defendant assisted an accomplice in the
killing of the victim by his participation in the underlying armed
robbery, where the defendant and the accomplice forcefully en-
tered the victim's home while the accomplice held a gun to the
victim, and the defendant and the accomplice walked the victim at
gunpoint throughout his home looking for valuables. The record
also showed that the defendant had the requisite malice. The
evidence established that the defendant instigated the armed
robbery by inviting his accomplice to participate and by encourag-
ing the accomplice to bring a gun. From these facts a jury could
properly conclude that the defendant intended to cause great
bodily harm or death. Similarly, malice is properly inferred from
the use of a gun even though the defendant did not personally
handle the firearm. The jury could properly conclude that the
defendant intended to do an act in obvious disregard of life
endangering consequences from the defendant's encouragement of
the accomplice to bring a gun.

   2. There was sufficient evidence to sustain the defendant's
felony-firearm conviction on the basis of an aiding and abetting
theory. A defendant may be convicted of felony-firearm under an
aiding and abetting theory where the defendant has procured,
counseled, aided, or abetted another person in the carrying or
possession of a firearm during the commission or attempted
commission of a felony.

   3. The defendant's convictions of felony murder based on

armed robbery or attempted armed robbery and of assault with intent to rob while armed violate double jeopardy. Attempted armed robbery is a lesser included offense of assault with intent to rob while armed. Thus, convictions of both felony murder and the predicate felony violate the prohibition against double jeopardy. No merit lies in the prosecution's argument that double jeopardy is not implicated because the assault with intent to rob while armed was completed before the murder. The evidence established that the attempted armed robbery underlying the defendant's convictions of felony murder and assault with intent to rob while armed was a continuing criminal enterprise. The conviction of assault with intent to rob while armed must be vacated.

Affirmed in part, vacated in part, and remanded for correction of the judgment of sentence to vacate the conviction of assault with intent to rob while armed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, *John C. Schlinker*, Deputy Chief Assistant Prosecutor, and *Vikki Bayeh Haley*, Assistant Prosecuting Attorney, for the people.

*Robin M. Lerg* and *Patrick K. Ehlmann* for the defendant on appeal.

Before: O'CONNELL, P.J., and JANSEN and WILDER, JJ.

WILDER, J. Defendant appeals by right his convictions of felony murder, MCL 750.316; assault with intent to rob while armed, MCL 750.89; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, following a jury trial.[1] We affirm defendant's convictions of felony murder and

---

[1] On January 24, 1997, defendant was convicted of these offenses following a jury trial concerning this incident. After unsuccessfully appealing his convictions to this Court and the Michigan Supreme Court, defendant filed a petition for habeas corpus in the United States District Court for the Eastern District of Michigan, Southern Division. The court conditionally granted defendant's petition, *Bulls v Jones*, 86 F Supp 2d 746 (ED Mich, 2000), and the Sixth Circuit Court of Appeals affirmed the

felony-firearm and vacate defendant's conviction of assault with intent to rob while armed.

### I. FACTS AND PROCEEDINGS

Around 3:00 A.M. on August 24, 1995, Officer Wordie Johnson and Officer Lee Kahan of the Flint police department responded to a report of a breaking and entering at the residence at 2001 Forest Hill in Flint. Officer Johnson testified at trial that upon arriving at the scene, the officers found two distraught women, Felicia Bobee and Selena Bobee, who lived next door, standing in the driveway. One of the women told the officers that after they heard a loud noise at the home of their neighbor, Jermane Johnson, they looked out the window and saw two men at Johnson's door. While one woman called 911, the other woman saw the men entering Johnson's house and ordering him around with a gun. The women stated that they also heard a gunshot from inside the home, and one of the women, who entered Johnson's home before the police arrived, told the responding officers that Johnson was dead. The women reported that one of the perpetrators was wearing a striped shirt and that the men fled through the back door.[2] When the officers entered the house, they found Johnson lying motionless on the stairway landing, obviously dead. The officers believed they recognized brain matter and bone fragments on the floor,

---

conditional grant of defendant's petition, *Bulls v Jones*, 274 F 3d 329 (CA 6, 2001). Defendant's second trial, which is the subject of this appeal, began on May 3, 2002.

[2] Officer Hudson Green testified that shortly after being dispatched to the scene and hearing the description of the suspects on the radio, he encountered a man wearing a striped shirt walking approximately two blocks from the victim's residence. Green and his partner took the man, later identified as Terrence LeShawn Hill, into custody.

stairs, and walls. Testimony at trial revealed that Johnson died from a gunshot wound to the back of his head.

Approximately one year later, in August 1996, Mekia Randle, defendant's girlfriend, called the Flint police department and informed Sergeant Theresa Lock that defendant told her that he and two of his friends had robbed a man in the man's home and that one of his friends shot the man. Randle subsequently made a recorded statement for the police reflecting the information defendant provided to her. Randle testified about the information she gave to the police and stated that defendant showed her the house on Forest Hill in Flint where this incident occurred.

Sergeant Rick Warren[3] testified that when he and Sergeant Thomas Korabick went to Randle's house to ask some follow-up questions on August 29, 1996, Randle's mother told the officers that defendant was hiding in the attic. The officers located defendant and arrested him on a warrant for an unrelated charge. After taking defendant to the police station and asking him some background questions, Sergeant Warren asked defendant about the homicide on Forest Hill. Defendant initially denied having any knowledge of the murder. After Sergeant Warren played a portion of Randle's statement for defendant, however, defendant briefly sat silently and then said, "D-Mack had the gauge."[4] Defendant proceeded to tell Sergeant Warren that while he was walking along a street one night, a car

---

[3] By the time of trial, Rick Warren had retired from the Flint police department. This opinion refers to him by his title at the time relevant to the facts in this case.

[4] Sergeant Warren testified that defendant later told him that D-Mack's full name is Deonte Matthews. At the time of trial in this case, Matthews had not been charged with any crimes arising out of this incident.

pulled up next to him and the man driving the car sexually propositioned him. Defendant asked the man if any money would be involved and, when the man responded affirmatively, defendant entered the car. Sergeant Warren testified that defendant said he intended at that point to at least beat the man up and take his money. Defendant also told Sergeant Warren that after arriving at the man's house and watching television for a while, defendant told the man that he had to go home but that he would return.

Sergeant Warren also testified that defendant said that, after leaving the man's house, he went to D-Mack's residence, told D-Mack what happened to him, and said that they could "get up on the guy," which defendant said meant that they were going to rob the man. Defendant also stated that he asked D-Mack if he had "some heat," and D-Mack went upstairs and returned with a shotgun. Defendant told Sergeant Warren that after a short conversation, they walked back to the house on Forest Hill. With D-Mack standing off to the side, defendant stood at the door of the house. When the man opened the door, D-Mack put the shotgun to the man's head, and defendant and D-Mack forced their way inside.

Sergeant Warren also testified that defendant said that after entering the house, they searched several rooms for valuables, taking the man with them at gunpoint while he pleaded with them not to shoot him. When they went to the second floor, defendant entered one bedroom and D-Mack and the man went into another bedroom. Sergeant Warren further testified that defendant told him that he then heard the sound of someone running, followed by a shotgun blast, and that when he got out of the bedroom, he saw D-Mack standing at the top of the stairs and the man lying at

the bottom of the stairs. Sergeant Warren testified that defendant said he had asked D-Mack why he shot the man, and that D-Mack responded that the victim tried to run. The two ran out of the house and split up about a block later. Defendant denied taking any items from the house and said that they did not take large items from the house because they did not want to draw attention to themselves.

Sergeant Warren further testified that later that day, while re-interviewing defendant, defendant stated that a third individual, Terrance Hill, also known as T-Mack, had also been involved in the incident. Defendant said that T-Mack was at D-Mack's house when defendant went there, and that T-Mack accompanied them to the man's house and stood outside the door acting as a lookout.

The defense rested without presenting proofs. The jury convicted defendant as charged, and the trial court subsequently sentenced defendant to life in prison for felony murder, twenty-five to fifty years' imprisonment for assault with intent to rob while armed, and two years' imprisonment for felony-firearm. Defendant now appeals.

## II. STANDARDS OF REVIEW

This Court reviews a challenge to the sufficiency of the evidence to determine whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved all the essential elements of the crime beyond a reasonable doubt. *People v Bulmer*, 256 Mich App 33, 36; 662 NW2d 117 (2003), citing *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). " 'The standard of review is deferential: a reviewing court is required to draw all reasonable

inferences and make credibility choices in support of the jury verdict.' " *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and reasonable inferences arising from the evidence may sufficiently prove the elements of a crime. *People v Tanner*, 469 Mich 437, 444 n 6; 671 NW2d 728 (2003).

We review unpreserved claims of constitutional error to determine whether a plain error occurred that affected the defendant's substantial rights. *People v Barber*, 255 Mich App 288, 291; 659 NW2d 674 (2003), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

### III. ANALYSIS

Defendant first argues that the prosecution failed to present sufficient evidence to support his conviction of felony murder. We disagree.

Felony murder consists of second-degree murder in combination with one of the felonies enumerated in MCL 750.316. *People v Maynor*, 256 Mich App 238, 243-244; 662 NW2d 468 (2003), citing *People v Magyar*, 250 Mich App 408, 412; 648 NW2d 215 (2002). In the present case, the prosecution proceeded against defendant on an aiding and abetting theory. Accordingly, we must determine whether the prosecution presented sufficient evidence to prove that defendant

> (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v Riley*

*(After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Carines, supra* at 755.]

Defendant admits that the evidence showed that he had an intent to commit the underlying felony, armed robbery. Defendant contends, however, that the evidence did not show either that he performed acts or gave encouragement that assisted in killing the victim, or that he possessed the requisite intent for murder. In other words, he claims that the prosecution submitted insufficient evidence to satisfy the first two elements established by *Riley*. The record does not support this assertion.

First, we conclude that the prosecution presented sufficient evidence from which a reasonable jury could conclude that defendant performed acts that assisted D-Mack with killing the victim. " 'Aiding and abetting' describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. . . ." *Carines, supra* at 757, quoting *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995). A jury may infer that the defendant aided and abetted the killing by participating in the underlying offense. *Carines, supra* at 759-760. Here, the evidence demonstrated that defendant and D-Mack forcefully entered the victim's home while D-Mack held the gun to the victim's head and that defendant and D-Mack walked the victim around the house at gunpoint while searching his home for valuables. The jury could infer that by performing these actions, defendant assisted D-Mack in perpetrating the murder. The prosecution, therefore, presented sufficient evidence to satisfy the first *Riley* element.

Likewise, we conclude that the prosecution presented sufficient evidence to establish malice and thereby

satisfy the second prong of the *Riley* test. *Carines, supra* at 759. A defendant's malice, sometimes described[5] as "acting in wanton and wilful disregard of the possibility that death or great bodily harm would result," *id.* at 760, can be inferred from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999); *Carines, supra* at 760. Here, defendant instigated the criminal

---

[5] In *People v Goecke*, 457 Mich 442, 464, 465 n 26; 579 NW2d 868 (1998), the prosecution asked the Court to determine whether malice required proof of "subjective" intent, citing *People v Dykhouse*, 418 Mich 488, 495; 345 NW2d 150 (1984), in which the Court defined the "third form" of malice as "the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result," as opposed to the intent to do an act in "wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm," as articulated by the Court in *People v Aaron*, 409 Mich 672, 728; 299 NW2d 304 (1980). The Court, reiterating the definition cited in *Aaron, supra* at 728, held that "[m]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm," *id.* at 464, and declined to address the intent issue because there was sufficient evidence of malice in the case under either standard, *Goecke, supra* at 465 n 26. The following year, in *Carines,* the Court cited both definitions of the third form of malice without indicating any practical difference between them. *Carines, supra* at 759-761. Similarly, last year in *Riley,* the Court cited *Carines* in articulating the elements of felony murder on an aiding and abetting theory, but cited only *Aaron* in defining the evidence required to prove malice.

We feel compelled to note that an individual who "wantonly and willfully disregard[s] the likelihood that the natural tendency of his behavior was to cause death or great bodily harm" does not necessarily possess "the knowledge that death or great bodily harm is the probable result" of his actions. However, because our Supreme Court has used these definitions interchangeably and the facts herein do not require us to resolve whether the differences between the two definitions have any jurisprudential significance, we leave this question for our Supreme Court to grapple with at an appropriate time.

transaction by going to D-Mack's house, inviting him to participate in the robbery, and encouraging D-Mack to use a dangerous weapon during the robbery, as discussed below. The jury could conclude that this series of events, set in force by defendant, was likely to cause death or great bodily harm.

Similarly, malice can be inferred from the use of a deadly weapon. *Turner, supra* at 567. Although the evidence did not show that defendant handled the weapon, he nevertheless "used" the weapon, with D-Mack's help, to perpetrate the crime and such "use" also supports an inference of malice. See *Carines, supra* at 760. Although defendant's knowledge of D-Mack's intent to kill the victim would, in itself, show that defendant was acting with "wanton and wilful disregard," *Riley, supra* at 141, the jury could infer defendant's malice independent of his knowledge of D-Mack's intent. The evidence was sufficient for the jury to conclude that defendant "intend[ed] to do an act in obvious disregard of life endangering consequences," *Goecke, supra* at 466, thus evidencing his malicious intent, *id.*, and satisfying the second element listed in *Riley*.

Defendant also claims that the prosecution presented insufficient evidence to sustain his felony-firearm conviction on the basis of an aiding and abetting theory. We disagree.

A defendant may be convicted of felony-firearm on the basis of an aiding and abetting theory when the prosecution establishes that the defendant has procured, counseled, aided, or abetted another person in the carrying or possession of a firearm during the commission or attempted commission of a felony. *People v Moore,* 470 Mich 56, 68; 679 NW2d 41 (2004) In the instant case, the evidence showed that defendant told

Sergeant Warren that he went to D-Mack's house, proposed that they rob the victim, and asked D-Mack whether he had "any heat." This evidence establishes counseling of another person in the carrying or possession of a firearm during the commission or the attempted commission of the robbery sufficient to find defendant guilty as an aider and abetter. *Id.* Accordingly, viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to sustain defendant's felony-firearm conviction.

Finally, defendant contends that his convictions of felony murder based on armed robbery or attempted armed robbery and of assault with intent to rob while armed violate double jeopardy. Because defendant did not raise this issue in the trial court, we must determine whether a plain error occurred that affected defendant's substantial rights. *Barber, supra.* We conclude that defendant's convictions of both felony murder and assault with intent to rob while armed violate double jeopardy; therefore, a plain error occurred that affects defendant's substantial rights.

Convictions of felony murder and the predicate felony violate the prohibition against double jeopardy. *People v Wilson,* 242 Mich App 350, 360; 619 NW2d 413 (2000) (citations omitted). Because attempted armed robbery is a necessarily included lesser offense of assault with intent to rob while armed, *People v Akins,* 259 Mich App 545, 547, 552; 675 NW2d 863 (2003), defendant's conviction of assault with intent to rob while armed results in the same double jeopardy violation as would a separate conviction of attempted armed robbery. See *People v Wilder,* 411 Mich 328, 342; 308 NW2d 112 (1981).

The prosecution argues that this case is analogous to *People v Colon,* 250 Mich App 59, 62-63; 644 NW2d 790

(2002), where this Court stated that the defendant's convictions of assault with intent to murder and assault with intent to do great bodily harm less than murder did not violate double jeopardy protections. Quoting *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995), we found that " '[t]here is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other.' " *Colon, supra* at 63. The prosecution claims that, similarly to *Colon* where the defendant had completed the crime of assault with intent to murder before he committed the assault with intent to do great bodily harm less than murder, in the present case defendant had committed the crime of assault with intent to rob while armed before the felony murder occurred.

However, during trial the prosecution did not present the crimes of felony murder and assault with intent to rob while armed as separate incidents; rather, it portrayed the facts in this case as a continuing sequence of events that culminated in the victim's death. We agree that the record supports the portrayal made by the prosecution at trial and establishes that the attempted armed robbery underlying defendant's convictions of felony murder and assault with intent to rob while armed was a continuing criminal enterprise. After forcefully entering the home, defendant and D-Mack walked the victim around at gunpoint while searching his home for items to steal. Only briefly before D-Mack shot the victim did defendant separate from D-Mack to enter a bedroom alone to search it. The fact that the attempted armed robbery continued throughout the entire criminal episode readily distinguishes this case from *Colon*, in which the assaults were clearly separate events that took place over a ninety minute period, with the defendant ceasing one assault to search the pre-

mises and then later returning to beat the victim again. *Colon, supra* at 63-64. Accordingly, we vacate defendant's conviction of assault with intent to rob while armed.

Affirmed in part and vacated in part. Remanded for the purpose of correcting the judgment of sentence to vacate defendant's conviction of assault with intent to rob while armed. We do not retain jurisdiction.