# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL ERIC FLORES,

        Defendant-Appellant.

UNPUBLISHED
August 23, 2016

No. 326936
Saginaw Circuit Court
LC No. 14-040327-FC

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), and one count of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to a prison term of 40 to 60 years for each CSC I conviction, to be served consecutively, to a concurrent prison term of 140 to 270 months for the CSC II conviction. We affirm defendant's convictions, but vacate his consecutive sentences for the CSC I convictions and remand for resentencing on those offenses.

This case arises out of defendant's sexual assault of his stepdaughter, TM. The basis for the CSC-I charges were allegations that defendant penetrated TM's genital opening with his fingers and that he penetrated her mouth with his penis. At the time of trial, TM was six years old. She testified that on multiple occasions defendant touched her "front private part" underneath her clothing and that he moved his hand while he did so. She stated that defendant showed her pornographic movies, including movies in which children appeared, and said that he touched her vagina while he watched the movies. In addition, TM stated that defendant rubbed his penis against her vagina and buttocks on more than one occasion and that he also placed his penis in her mouth. TM explained that defendant began touching her when she was in preschool, but that after she told her mother about defendant's actions she did not see him again. TM's mother testified that TM disclosed the abuse to her and that, by the end of her disclosure, she was screaming, crying, and shaking. Further, Michigan State Police Detective Hillary House testified that she observed TM's interview in August 2013, at which time TM was not ready to discuss the matter. However, after TM entered counseling, TM was able to discuss the matter in June 2014. Defendant testified on his own behalf and denied the allegations made by TM.

-1-

In a brief filed by appellate counsel, defendant first argues that there was insufficient evidence to sustain the CSC I conviction based on digital penetration. He contends that TM's testimony was not sufficient to establish penetration.[1] We disagree.

A person is guilty of CSC I if he or she engages in "sexual penetration" with another person who is under 13 years of age. MCL 750.520b(1)(a). "Sexual penetration" is defined in MCL 750.520a(r) as

> sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, or any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

TM testified that defendant put his finger on her vagina, but said that his finger did not enter the "hole." However, with the assistance of a visual aid from the prosecutor, TM also testified that defendant's finger slipped into the outer folds of her vagina. Her testimony therefore was sufficient to establish penetration as defined in MCL 750.520a(r) and to sustain defendant's CSC conviction based on digital penetration of her genital opening.

Defendant next argues that Detective House was improperly allowed to offer an opinion on the meaning of penetration from a legal perspective.[2] House testified as follows:

> *Q:* Okay. Now, you've been doing sexual assault cases, investigating sexual assault cases for 20-some years now, and there's a—I think there's a perception of what penetration means in the world. Is it different when we look at it from a legal perspective?
>
> *A:* It is.
>
> *Q:* Okay. Can you explain to the jury what you mean by penetration, from a legal perspective?

---

[1] Due process in a criminal case requires a prosecutor to produce sufficient evidence to warrant the trier of fact in finding that each element of the charged offense was proved beyond a reasonable doubt. *People v Nowak*, 462 Mich 392, 399; 614 NW2d 78 (2000). In reviewing a sufficiency of the evidence question, we view the evidence de novo in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the elements of the offense were proven beyond a reasonable doubt. *People v Bulls*, 262 Mich App 618, 623; 687 NW2d 159 (2004). We do not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *Id.* at 624. A trier of fact may make reasonable inferences from direct or circumstantial evidence in the record. *Id*.

[2] Because defendant did not object to the challenged testimony at trial, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

*A:* Sure. Well, like when [TM] was—when Ms. Barnes—sorry, Janetsky—

*Q.* I know.

*A.* –came up to—to the stand here, and they were talking about, like your folds in your vaginal area or lips, whatever you call it, when TM said that he was rubbing this way, anywhere inside the skin is considered penetration. So it doesn't actually have to go inside of her. Simply inside the skin is considered penetration. So when she described that motion, that he was rubbing in there, that would be penetration.

Assuming *arguendo* that this testimony was improper, we nevertheless conclude that it did not affect defendant's substantial rights. The trial court instructed the jury that its task was to find the facts and that it was entitled to accept or reject in full or in part all of the testimony presented. As noted, TM's testimony described defendant's actions in a way that the jury could conclude that penetration occurred, so the jury was not required to rely on Detective House's testimony to find the necessary element of penetration. Moreover, the trial court also instructed the jury that it was to take the law as given by the court, and the court instructed the jury on the element of penetration consistent with the definition in MCL 750.520a(r). A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, on this record, the court's instructions were sufficient to protect defendant's substantial rights.[3]

Next, in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that the prosecutor committed misconduct by questioning defendant about TM's character for honesty and by arguing facts not in evidence during closing argument. Defendant also argues that defense counsel was ineffective for failing to object to the prosecutorial misconduct.[4]

---

[3] Because Detective House's testimony did not affect defendant's substantial rights, we also reject defendant's related claim that defense counsel was ineffective for failing to object to the testimony. Even if an objection would have been appropriate, an ineffective assistance of counsel claim cannot succeed because defendant was not prejudiced by the testimony. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

[4] Because there was no objection to the alleged instances of prosecutorial misconduct, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002). Our review of defendant's ineffective assistance claim is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). During cross-examination, the prosecutor asked defendant the following questions about TM:

> *Q:* And she's—she's, all around, just a good kid?
>
> *A:* She is.
>
> *Q:* And she's an honest kid, and she's a—she's a thankful kid, and she's I mean, she's just a pleasure. Is that fair?
>
> *A:* She's—yes, that is fair.
>
> *Q:* Okay. And you loved her like she was yours?
>
> *A:* Yes, I did.
>
> *Q:* I mean, from the time you knew her, this was the—a daughter to you; a daughter, not a stepdaughter?
>
> *A:* Yes.
>
> *Q:* And you're really the only dad she ever really knew?
>
> *A:* Yup.
>
> *Q:* And you're the day-to-day person that's there with her?
>
> *A:* Exactly.
>
> *Q:* Okay. And all that time you spent with her, [TM] is—you can't help but describe her as just a good, honest little girl?
>
> *A:* Yes, I do.

It is improper for a prosecutor to ask a defendant to comment on the credibility of a prosecution witness because credibility determinations are to be made by the jury and a defendant's opinion is not probative of credibility. *People v Knapp*, 244 Mich App 361, 384; 624 NW2d 227 (2001). However, the foregoing exchange reveals that the prosecutor did not directly ask defendant if TM's allegations against him were true. The questions were directed at obtaining defendant's opinion of TM's character, given that defendant was particularly familiar with TM from his status as her stepfather. Accordingly, the prosecutor's questioning did not constitute plain error. Furthermore, to the extent that the prosecutor's questions to defendant regarding TM's honesty could be considered improper, any prejudicial effect could have been cured by a timely instruction to the effect that credibility was a question for the jury. *People v Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002). Indeed, even without an objection, the trial court instructed the jury that it was to decide which witnesses to believe, and the court also instructed

the jury on various factors to consider in evaluating a witness's credibility. The trial court's instructions protected defendant's substantial rights.[5]

Next, defendant correctly observes that "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial[.]" *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008). We agree that the prosecutor made a statement that did not comport with the evidence produced at trial when she stated during closing argument that a defense witness testified that TM's mother visited defendant without the children present after the allegations of abuse. Contrary to the prosecutor's assertion, the defense witness actually testified that the children were present during the visits. However, although the prosecutor did misstate the testimony, nothing in the record indicates that the prosecutor did so deliberately. Instead, after making the misstatement, the prosecutor correctly noted that defendant's mother and brother had testified that the children were in defendant's presence, but then stated that the outcome of the case did not rest on that point because it did not relate to the elements of the charged offenses. Thus, the prosecutor's position was that any conflict in the evidence regarding whether defendant had seen the children since the allegations were made was not relevant to the outcome, and so we conclude the prosecutor's isolated misstatement on this subject did not affect defendant's substantial rights. Moreover, any prejudice caused by the prosecutor's misstatement could have been cured had defendant requested an instruction to correct the misstatement. *Leshaj*, 249 Mich App at 419. Indeed, even without an objection, the trial court protected defendant's substantial rights by instructing the jury that the lawyers' statements and argument are not evidence, and that the jury should only accept the things the lawyers say that are supported by the evidence.[6]

Next, in his pro se brief, defendant argues that the testimony of TM's mother, describing TM's report of defendant's sexual abuse, was inadmissible hearsay, and that trial counsel was ineffective for failing to object to the testimony.[7] We disagree.

"Hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

---

[5] In addition, defendant's ineffective assistance of counsel claim cannot succeed because any error by counsel in failing to object was not prejudicial. *Carbin*, 463 Mich at 600.

[6] Further, under these circumstances, trial counsel's failure to object or request an instruction does not establish ineffective assistance of counsel. Because the prosecutor did not argue that resolution of this particular subject matter was outcome determinative, and in fact argued just the opposite, and because the trial court ultimately instructed the jury that the lawyers' arguments are not evidence, there is no reasonable probability that, but for counsel's failure to object to the prosecution's misstatement, the outcome of the trial would have been different. *Carbin*, 463 Mich at 600.

[7] Our review of the unpreserved evidentiary issue is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. Defendant's ineffective assistance of counsel claim is limited to errors apparent on the record. *Heft*, 299 Mich App at 80.

MRE 801(c). As a general rule, hearsay is inadmissible. MRE 802. However, under MRE 803(2), if a statement qualifies as an excited utterance it is inadmissible despite the fact that it is hearsay. MRE 803(2) allows admission of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A statement is admissible under the excited utterance exception if it: (1) is related to a startling event, and (2) was made while the declarant was still under the excitement caused by the event. *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule. The question is not strictly one of time, but of the possibility for conscious refection." *Id.* at 551.

TM's mother testified that she was giving TM and EM a shower when EM started making noises that he indicated he had heard when defendant was with TM. TM's mother stated that TM initially did not want to say anything, but then began relating defendant's actions, and was screaming, crying, and shaking by the time she finished recounting defendant's actions. This testimony supports that TM's statements to her mother related to a startling event (i.e., defendant's sexual abuse) and were made while she was under the stress of excitement caused by the event. Accordingly, there was no plain error in admitting the statement.[8]

Finally, in the brief filed by appellant counsel, defendant argues that the trial court erred by ordering his sentences for the CSC I convictions to run consecutively and that defense counsel was ineffective for failing to challenge the trial court's authority to impose consecutive sentences. Because defense counsel expressly stated at sentencing that consecutive sentencing was permitted for the CSC I convictions, defense counsel waived any error in imposing consecutive sentences. See *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving no error to review. *Id.* at 215. Accordingly, we will only review defendant's argument that defense counsel was ineffective for failing to object to the imposition of consecutive sentences.

Defense counsel is presumed to have afforded effective assistance and defendant bears the burden of proving otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Uphaus (On Remand)*, 278 Mich 174, 185; 748 NW2d 899 (2008). Counsel must have made errors so serious that he was not performing as the "counsel" guaranteed by the federal and state constitutions. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). In addition, defense counsel's deficient performance must have prejudiced defendant. *Id.* To demonstrate prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.*

---

[8] Moreover, because the admission of the statement was not improper, defense counsel was not ineffective for failing to object to the testimony. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) (holding that defense counsel is not required to make a meritless motion).

In Michigan "concurrent sentencing is the norm" and a "consecutive sentence may be imposed only if specifically authorized by statute." *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996). The CSC I statute provides that the trial court "may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." MCL 750.520b(3). The term "arising from the same transaction" is not defined by statute. *People v Ryan*, 295 Mich App 388, 402; 819 NW2d 55 (2012). In *Ryan*, this Court construed this phrase by applying our Supreme Court's analysis in *People v Johnson*, 474 Mich 96; 712 NW2d 703 (2006), a case involving similar statutory language. *Ryan*, 295 Mich App at 403. In *Johnson*, the Supreme Court construed the phrase "arising out of the sentencing offense" in MCL 777.41(2)(a), and held:

> [W]e have previously defined "arising out of" to suggest a causal connection between two events of a sort that is more than incidental. We continue to believe that this sets forth the most reasonable definition of "arising out of." Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. [*Johnson*, 474 Mich at 101.]

In *Ryan*, this Court held that two acts of CSC I arose from the same transaction, and thereby authorized consecutive sentencing under MCL 750.520b(3), where the two acts "grew out of a continuous time sequence in which [an] act of vaginal intercourse was immediately followed by [an] act of fellatio" and the two particular sexual penetrations "had a connective relationship that was more than incidental." *Ryan*, 295 Mich at 403. Thus, *Ryan* establishes that separate criminal offenses arise from the same transaction within the meaning of MCL 750.520b(3) where they grow out of a continuous time sequence and have a connective relationship that is more than incidental. See *People v Brown*, 495 Mich 962, 963; 843 NW2d 743 (2014) (citing with approval this Court's application of the *Johnson* analysis in *Ryan*).

In this case, the evidence did not establish any timeline for the assaults with which defendant was charged and convicted. TM did not testify that one act followed another without interruption. Instead, she testified that the sexual acts occurred over a period of time and were committed on more than one occasion. Her testimony did not establish that the penetrations that formed the basis for defendant's CSC I convictions "grew out of a continuous time sequence" and had "a connective relationship that was more than incidental." *Ryan*, 295 Mich at 403. In sum, no evidence supports that defendant's two CSC I convictions arose from the same transaction within the meaning of MCL 750.520b(3).

We disagree with the prosecution's argument that consecutive sentencing was appropriate because the atmosphere of fear that defendant created with his actions should make the entire period in which defendant assaulted TM "the same transaction." Under the prosecution's analysis, two discreet acts occurring several months apart with no causal connection could be part of the same transaction. This position does not comport with the interpretation of that phrase set out in *Ryan*. Moreover, to allow consecutive sentencing under such an analysis would render nugatory the requirement in MCL 750.520b(3) that the offenses "arise from the same transaction."

Accordingly, because no evidence establishes that defendant's CSC I convictions arose out of the same transaction within the meaning of MCL 750.520b(3), we conclude that defense counsel's approval of consecutive sentencing fell below an objective standard of reasonableness. Further, defendant was clearly prejudiced by the error because it resulted in the imposition of consecutive sentences not authorized by law, thereby subjecting defendant to a significantly lengthier period of incarceration. Accordingly, we vacate defendant's consecutive sentences for the CSC I convictions and remand for resentencing in accordance with MCL 750.520b(3).

We affirm defendant's convictions, but vacate his consecutive sentences for the CSC I convictions and remand for resentencing on those offenses. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro