*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY KEITH-SEATON JONES,

Defendant-Appellant.

UNPUBLISHED
February 29, 2024

No. 363353
Jackson Circuit Court
LC No. 20-003240-FC

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

A jury convicted defendant, Anthony Keith-Seaton Jones, of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On appeal, Jones argues that the trial court abused its discretion by admitting the preliminary examination testimony of a witness who did not show up for trial and by admitting a hearsay statement. Because the prosecution exercised due diligence when attempting to locate and secure the witness, the trial court did not err by finding that the witness was unavailable and allowing the witness's testimony from the preliminary examination to be read into the record. Further, although the trial court erred by allowing the challenged statement to be admitted under the coconspirator exception to hearsay, Jones is not entitled to relief because this error was harmless. We affirm.

## I. BACKGROUND[1]

In the early hours of August 25, 2020, AV coincidentally met up with Jones, XD, and JW at a party in Battle Creek.[2] After Jones and JW, who each had a gun, secured bullets, Jones, XD, AV, and JW left Battle Creek and drove to Kalamazoo, where they picked up a friend, Aivery "Chuck" Banks, who also had a gun. Afterward, the group drove to Jackson, dropping off XD in Battle Creek along the way. While in Jackson, Jones, Banks, AV, and JW were searching for a

---

[1] We use initials to identify all witnesses who were not criminally charged in this case.

[2] Both AV and JW were offered immunity in exchange for their testimony.

woman, XB. XB was allegedly in the same gang as the victim, and Jones was in communication with XB throughout the drive from Kalamazoo to Jackson. As they drove through Jackson, Jones provided AV with directions in hopes of locating XB, eventually instructing AV to drive to a liquor store. While at a stop sign near the liquor store, the group spotted the victim walking across the street. Jones and Banks discussed shooting the victim. Jones then exited the vehicle and a shot was fired. Banks also exited the car and more shots were fired.[3] Jones was seen pointing his gun towards the ground during the shooting. The victim died as the result of a gunshot wound. The bullet that ultimately caused the victim's death matched bullets from Banks's gun.

Banks pleaded guilty to first-degree premeditated murder and felony-firearm for his role in the shooting. At Jones's trial, the prosecution's theory was that Jones aided and abetted the murder. Several witnesses testified, including AV and XD. The prosecutor sought to admit a statement made by AV to XD the day after the shooting. According to XD, AV told him, "We score[d]." Defense counsel objected to the admission of AV's statement, claiming it was hearsay. In response, the prosecutor argued that AV's statement was admissible under the coconspirator exception to hearsay. The trial court overruled the objection. XD testified that AV's use of "we" referred to Jones, Banks, AV, and JW, and XD explained that the phrase "we scored," meant "they caught him," "somebody die[d]," or that "you coulda hit them and you didn't know that they die[d]." The prosecution clarified the definition with XD:

> *Q*. Shooting at somebody else is scoring?
>
> *A*. Yes.
>
> *Q*. Hitting them is scoring?
>
> *A*. Yes.
>
> *Q*. And—and potentially killing them, that's all different variances of—to score?
>
> *A*. Yes.

During the first day of trial, the prosecutor informed the trial court that despite being served with a subpoena to appear as a witness, JW failed to appear. At the prosecutor's request, the trial court issued a bench warrant for JW. The next day, the prosecutor indicated that despite proper service, the issuance of a bench warrant, and checking local jails and the youth center in Calhoun County, JW could not be located. The prosecutor argued that due diligence had been exercised to locate JW and requested that the trial court permit him to read JW's testimony from the preliminary examination into the record. Defense counsel objected, claiming that the prosecutor did not exercise the requisite due diligence. Because JW was properly served and a bench warrant was issued, the trial court granted the prosecutor's request and allowed JW's testimony from the

---

[3] At trial, the witness testimony was conflicting on who fired shots and from where. However, forensic experts testified that the bullets found at the scene matched bullets from guns purportedly used by Jones and Banks.

preliminary examination transcript to be read into the record. Additionally, Jones's account of the shooting was shared by one of the investigating detectives. According to the detective, Jones admitted to having "beef" with XB and her gang and to firing a 9-millimeter handgun at the ground during the shooting.

Following the conclusion of proofs, the jury convicted Jones as previously noted. The trial court sentenced Jones to 25 to 50 years' imprisonment for his second-degree murder conviction and two years' imprisonment for his felony-firearm conviction, to be served consecutively, and awarded him 686 days of jail credit. This appeal followed.

## II. UNAVAILABLE WITNESS AND DUE DILIGENCE

Jones argues that the prosecution failed to establish that it exercised due diligence in securing JW's appearance at trial, and therefore the trial court improperly admitted JW's preliminary examination testimony.

We review a trial court's determination regarding the exercise of due diligence for an abuse of discretion. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). "An abuse of discretion occurs when the trial court reaches a result that is outside the range of principled outcomes." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). We review a trial court's finding that a witness was unavailable for clear error. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Additionally, "[w]hether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). De novo review means that we review an issue independently, without any required deference to the courts below. *Id.*

"A defendant has the right to be confronted with the witnesses against him or her." *People v Yost*, 278 Mich App 341, 369-370; 749 NW2d 753 (2008), citing US Const, Am VI; Const 1963, art 1, § 20; *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A witness's former testimony may be admitted as substantive evidence without violating the rule against hearsay or a defendant's confrontation right so long as the witness is unavailable for trial and "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1); *Garland*, 286 Mich App at 7; *Bean*, 457 Mich at 682.[4]

---

[4] Jones contends that although he was able to cross-examine JW at the preliminary examination, his confrontation rights were not sufficiently protected because "many of the facts of the case were [not] well established and fleshed out." But Jones's conclusory statement is not supported by any caselaw or further argument. Because Jones failed to adequately brief his argument, we consider it abandoned. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

Because Jones has abandoned any argument that he lacked the "opportunity and similar motive" to cross-examine JW at the preliminary examination, MRE 804(b)(1), the admissibility of JW's preliminary examination testimony depends on whether he was unavailable to testify at trial.

> "Unavailability as a witness" includes situations in which the declarant . . . is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown.  [MRE 804(a)(5).][5]

"The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial." *Bean*, 457 Mich at 684.  "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.  In this context, "due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *People v Eccles*, 260 Mich App 379, 391; 677 NW2d 76 (2004).

The record shows that JW was properly served with a subpoena to be present on the first day of trial.  Given JW's immunity agreement and appearance at the preliminary examination, the prosecution had no reason to believe that JW would not appear for trial.  Once JW failed to appear, the prosecutor took additional reasonable steps to secure his appearance; the prosecutor requested and obtained a bench warrant from the trial court in an attempt to locate JW, and law enforcement officials checked local jails and the youth center in Calhoun County where JW resided.  Although these efforts did not succeed, the record supports the trial court's determination that the prosecution made good-faith, reasonable efforts to locate and secure JW, so the court did not abuse its discretion by ruling that the prosecution exercised due diligence.  As a result, the trial court did not clearly err by finding that JW was an unavailable declarant as required by MRE 804(a)(5), and it properly admitted his preliminary examination testimony at trial.

### III.  HEARSAY

Jones also argues that the trial court erred by admitting AV's prejudicial hearsay statement.

We review a trial court's decision to admit evidence for an abuse of discretion.  *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).  If the trial court's decision to admit evidence involves a preliminary question of law, such as whether a rule of evidence precludes admissibility, then we review that preliminary question of law de novo.  *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).  "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *People v Propp*, 508 Mich 374, 383; 976 NW2d 1 (2021).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c).  Hearsay is generally inadmissible unless it falls within an established exception to the hearsay rule.

---

[5] We note that MRE 801, discussed below, and MRE 804 were amended effective January 1, 2024. We cite the version of the court rules in effect at the time of Jones's trial.

-4-

MRE 802. Under the coconspirator exception, "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy." MRE 801(d)(2)(E). For the exception to apply, "the proponent of the statement[] must establish three things." *People v Martin*, 271 Mich App 280, 316; 721 NW2d 815 (2006). "First, the proponent must establish by a preponderance of the evidence that a conspiracy existed through independent evidence." *Id.* at 316-317. A conspiracy exists when two or more people combine with the intent to accomplish an illegal objective. *People v Blume*, 443 Mich 476, 481-482; 505 NW2d 843 (1993). "Second, the proponent must establish that the statement was made during the course of the conspiracy." *Martin*, 271 Mich App at 317. The conspiracy continues until the common enterprise has been fully completed, abandoned, or terminated. *Id.* Third and finally, "the proponent must establish that the statement furthered the conspiracy." *Id.*

The prosecution concedes that the challenged statement did not qualify for admission under MRE 801(d)(2)(E), and we agree. The goal of the conspiracy in this case was the murder of the victim. The conspiracy was completed after the group left the scene of the shooting because no further action was necessary to accomplish the murder. The exchange between AV and XD, however, occurred the day after the murder. Thus, their discussion about "scoring" was unconnected to the common enterprise of the conspiracy because the conspiracy. Because AV's challenged statement did not meet the second prong of the coconspirator exception, see *Martin*, 271 Mich App at 317, the statement constitutes hearsay. Further, because no other hearsay exceptions apply to AV's statement, the trial court abused its discretion by admitting the statement when it was inadmissible as a matter of law. See *Propp*, 508 Mich at 383.

That said, this isolated error does not entitle Jones to relief because it was harmless. "[A] preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 496, quoting MCL 769.26. The prejudice inquiry of the harmless-error doctrine "focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Gursky*, 486 Mich 596, 620; 786 NW2d 579 (2010) (cleaned up). "Where the declarant himself testifies and is subject to cross-examination, the hearsay testimony is of less importance and less prejudicial." *Id.* at 621.

Because the evidence did not establish that Jones fired the bullet that killed the victim, he was convicted of felony firearm and second-degree murder under a theory of aiding and abetting. Under MCL 767.39:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

"Aiding and abetting describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime." *People v Bulls*, 262 Mich App 618, 625; 687 NW2d 159 (2004) (cleaned up). To support a finding of aiding and abetting, the prosecutor must show:

(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. [*People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999) (cleaned up).]

Additionally, the prosecutor can establish a defendant's liability for second-degree murder under an aiding and abetting theory by showing that second-degree murder was the "natural and probable" consequence of the crime that the defendant intended to aid or abet. *People v Robinson*, 475 Mich 1, 14-15; 715 NW2d 44 (2006).

During trial, XD explained that the phrase "we scored" meant "basically they caught him," "somebody die[d]" or that "you coulda hit them and you didn't know that they die[d]." Although this statement implies that Jones and Banks intended to shoot, injure, or kill the victim, significant amounts of untainted evidence equally established Jones's intent to aid and abet the victim's murder. See *Gursky*, 486 Mich at 620. While at the party in Battle Creek, Jones procured bullets for his gun. Jones was known to have "beef" with XB, who was reportedly in the same gang as the victim, and was communicating with her throughout the night leading up to the shooting. Upon leaving Battle Creek, Jones directed AV to drive throughout Jackson to locate XB and instructed AV to drive to the liquor store where they discovered the victim. AV and JW both testified that Jones and Banks discussed shooting the victim before exiting the vehicle and firing shots. The bullet that hit and ultimately killed the victim matched the bullets from Banks's gun. After Jones and Banks fired shots, they quickly retreated to the car and the group fled the scene.

Taken together, this evidence supported the jury's determination that Jones was guilty under an aiding-and-abetting theory. Put another way, witness testimony established that Jones "performed acts or gave encouragement that assisted the commission" of the murder and "intended the commission of the crime or had knowledge that [Banks] intended its commission at the time he gave aid and encouragement." *Carines*, 460 Mich at 757-758 (cleaned up). Although there was evidence suggesting that Jones tried to dissuade Banks from shooting the victim and shot at the ground, the jury credited the admissible evidence supporting Jones's guilt. We do not interfere with "the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Further, the erroneously admitted statement was not discussed in the prosecution's closing argument and its impact paled in comparison to the strength of the admissible inculpatory evidence presented at trial. Because the untainted evidence supported Jones's conviction under a theory of aiding and abetting, the erroneous admission of the challenged statement was not outcome determinative, and Jones is not entitled to relief.

## IV.  CONCLUSION

The trial court properly found that JW was an unavailable witness and admitted his preliminary examination testimony because the prosecution exercised due diligence when attempting to locate and secure JW for trial.  Additionally, although the trial court erroneously admitted AV's hearsay statement, Jones is not entitled to relief because this error was harmless. We affirm.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett