*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEWITT MCGOWAN, III,

        Defendant-Appellant.

UNPUBLISHED
July 15, 2021

No. 351094
Wayne Circuit Court
LC No. 18-007401-01-FC

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm defendant's convictions.

## I. BACKGROUND FACTS

This appeal arises from the June 16, 2018 shooting death of the victim, Jermaine Turnbow, Jr. Defendant and the victim were longtime friends, but in the months before the shooting a disagreement developed between them. On the afternoon of the shooting, defendant was at his girlfriend's home on Hooker Street in Detroit, purportedly to install a basketball hoop for the neighborhood children. Defendant was standing on the front porch of the home when he noticed the victim traveling in a vehicle on Hooker Street. The victim's girlfriend, Taquila Dawkins, was driving and the victim was the front passenger. As the vehicle approached, the victim got out of Dawkins's vehicle and walked toward the porch, where defendant was standing. Defendant and the victim began shouting at each other and defendant attempted to push the victim as the victim walked up the porch steps of the home. At some point, defendant began shooting the victim; the autopsy determined that the victim was shot 13 times. Gunshot wounds were found on the victim's chest, abdomen, back, right arm and forearm, and left wrist and hand. At least one wound resulted from the victim being shot in his back. Defendant immediately fled the scene and the victim was taken to the hospital where he was pronounced dead. A warrant was issued for defendant's arrest.

-1-

In August 2018, law enforcement officers arrested defendant in West Virginia, and he was returned to Michigan.

Defendant pleaded not guilty to the charges and the matter was scheduled for jury trial. Before trial, the trial court became aware of defendant's intent to present a self-defense argument. Specifically, defendant planned to present evidence of the victim's violent character as evidenced by the victim's membership in the "Zone 8" gang. The prosecution moved in limine to exclude evidence of the victim's involvement in the gang. Defendant also had gang affiliations; the trial court later issued an order precluding reference to either the victim's or defendant's gang affiliations. During trial, defendant sought to admit several photographs of the victim—some of which depicted the victim holding a variety of firearms and others which showed the victim holding firearms while standing with a group of people. The trial court admitted into evidence some of the photographs that showed the victim holding firearms; however, the court required that the group photograph be redacted so only the victim was depicted. Additionally, one of the photographs spelled out, among other things, "Zone 8," and the trial court ordered the wording be redacted. The jury convicted defendant as noted.

At the conclusion of the trial, one of the prosecutors met with the jury to discuss the outcome; the prosecutor was particularly interested in learning why the jury returned a verdict of guilty of second-degree murder, rather than guilty of first-degree murder. While the prosecutor was discussing the case with the jurors, the prosecutor thought she heard one of the jurors, Sandra Brown, mention that the juror had conducted a Google search during the jury's deliberations. The prosecutor later brought this information to the court's attention. The trial court eventually had Juror Brown return one week after the jury had returned its verdict, so the parties could question her under oath about the information she had provided to the court.

During the hearing, it became apparent that there were two possible Google searches at issue. Juror Brown stated that during the trial she had searched for "June 16th murder." She said that the search resulted in her finding a news article, but that she did not read it because she "said it wasn't right." Ms. Brown also testified that, following the verdict, another juror had said that he was going to look at Google Earth to see if there was a basketball hoop at the home in which the victim was shot.[1] However, Juror Brown did not believe that the second juror actually completed the Google Earth search because his comment was made after the jury had reached its verdict.[2]

---

[1] The other juror was apparently Carl Hendricks, although the record is not entirely clear in that regard. For clarity, this opinion will simply refer to him as "the second juror."

[2] Brown's testimony in this regard was as follows:

> [*Defense Attorney*]: My first question is: You said, to your knowledge, there was another juror who did Google—
>
> [*Juror*]: (Interposing) No. No. Somebody said, after the fact, that they were strongly saying that it was—There was probably never a basketball, never a

After Juror Brown's testimony, defendant moved for a new trial, or in the alternative, an evidentiary hearing to question the entire jury panel regarding the two Google searches. At the conclusion of Ms. Brown's testimony, the trial court stated:

> I am going to respond to your request to have all the jurors voir dired. I don't believe there is a basis for it at this time. There's been no information, based on this juror's testimony, that she shared any of the information with any of the jurors. And she clearly indicated the one juror stated he wanted to Google. But there's been no indication that he actually did. And so, I don't believe there is some doubt as to that, at this time.

The trial court ordered briefing on the issue, and following the receipt of briefs, denied both the motion for an evidentiary hearing and the motion for a new trial:

> I don't believe that the testimony rises to the standard of [Juror Brown] being exposed really to any information other than the fact that

---

basketball net. They want, you know—Well I should say how other people wanted to vote, should I? No?

[*Defense Attorney*]: I didn't ask you that—

[*Juror*]: (Interposing) No. I'm saying, I'm saying after the fact when the people were mad because the juror [sic] that the verdict didn't go the way they wanted it to go, they said, I'm—No. they even said: I might drive down—They said that basketball net was a lie. There was never a basketball net being built. That was a story, you know what I'm saying, to cover. And they says [sic]: I'm gonna—Oh. Google Earth. I'm gonna Google Earth the house. This is the last day. I'm gonna Google the Earth (sic) the last day we leave here and see if Google Earth can show me a basketball net.

\* \* \*

[*Defense Attorney*]: So, you said they Googled it after the fact?

[*Juror*]: No, they never even Googled it. They said there were going to go home. They probably didn't.

\* \* \*

[*Prosecutor*]: And I'll ask you: The gentleman—So, to your understanding, the gentleman who had talked about Google Maps, and I think you had already stated this, but was—Was your information from him that he had already—

[*Juror*]: (Interposing) No.

[*Prosecutor*]: Done Google—

[Juror]: (Interposing) He didn't at all—

-3-

there was an article on the internet. Even if I were to find that that information that was conveyed was more than what she testified it was, when we look at the actual case itself, the defendant took the stand. The defendant testified. There's video that shows the incident. And really the issue here was one of self-defense. Did the defendant, when the defendant shot the complainant in this matter, the decedent, was it in self-defense or was it not in self-defense.

And so that is ultimately the question that the jury had to make that decision on. And I simply don't find the fact that there might have been an article out there that talks about the homicide is enough to show that it would have affected the jury's verdict in that regard because this wasn't a question of identification of who it was that shot the decedent. That was on video. [Defendant] testified himself to that fact. It, it was one of self-defense.

And so, for that reason, I am gonna deny the defendant's motion for a new trial. I don't believe the testimony, as given by the juror, would necessitate—Affected the jury's verdict. The statements that she had made. And so, I am gonna deny the motion at this time and deny the request for a new trial, and as well as the request for an evidentiary hearing related to the misconduct. The juror's statements were simply that another juror said, being upset that it wasn't, at least the way I understood it, to be a first-degree murder conviction as opposed to a second-degree murder conviction was going to go out after the fact and do research. And I don't believe there's— Well, there's nothing wrong with doing research after the jury's verdict.

And so, I don't find any reason or necessity to bring the remaining jurors in to question them with regards to that.

Defendant was sentenced and this appeal followed.

## II. EXTRANEOUS INFORMATION

Defendant first argues that he was denied the right to a fair trial because the jury was improperly exposed to extraneous information when two individual jurors conducted the two separate and unrelated Google searches. According to defendant, the trial court should have ordered a new trial or, in the alternative, an evidentiary hearing at which all jurors testified. We conclude that in denying the motion for a new trial and declining to conduct an evidentiary hearing broader in scope than that which was conducted, taking testimony only from Juror Brown, the trial court acted within its discretion.

## A. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012) (citation omitted). "A trial court's denial of a motion for a mistrial based on juror misconduct is an abuse

-4-

of discretion only where the misconduct was such that it affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment." *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). "A trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts is reviewed de novo." *Id*. "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted.) The abuse of discretion standard "acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). When a trial court chooses one of these principled outcomes, it does not abuse its discretion. *Id*. "A trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Franklin*, 500 Mich at 100 (quotation marks and citation omitted) Finally, to the extent we must consider questions of constitutional interpretation, our review is de novo. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017).

## B. LAW AND ANALYSIS

It is a bedrock principle that a defendant has the right to a fair and impartial jury. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "During their deliberations, jurors may only consider the evidence that is presented to them in open court." *Id*. "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id*.

However, "not every instance of misconduct in a juror will require a new trial." *People v Fetterley*, 229 Mich App 511, 544; 583 NW2d 199 (1998) (citation omitted).

> The general principle underlying the cases is that the misconduct must be such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment. A new trial will not be granted for misconduct of the jury if no substantial harm was done thereby to the party seeking a new trial, even though the misconduct is such as to merit rebuke from the trial court if brought to its notice. [*Id*. at 544-545 (citation omitted).]

Accordingly, in cases involving allegations of an extraneous influence, a defendant must show (1) "that the jury was exposed to extraneous influences," and (2) "that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Budzyn*, 456 Mich at 88-89 (citations omitted). "Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id*. at 89. "If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt." *Id*. In determining whether an extraneous influence "created a real and substantial possibility" of prejudice to a jury's verdict, a trial court may consider a number of factors:

(1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Id*. at 89 n 11 (citation omitted).]

Here, there is no significant possibility that Juror Brown's Google search could have affected the verdict. While Ms. Brown did conduct a search, she did not read the associated article. Thus, the material was not "actually received." *Id*. Even more importantly, she did not disclose to any other juror that she had conducted such a search, and therefore, even if she had read the article, she could not have shared with any other juror any information obtained through the search. *Id*. Thus, the trial court had no cause to recall the other jurors to ask them about extraneous influences originating with Juror Brown, as there was no reason to think that the other jurors had been exposed to any such influence.[3] Moreover, as the trial court noted, it was undisputed at trial that defendant shot the victim, which was established by video evidence and was conceded by defendant. As the trial court further noted, it is extremely unlikely that anything that could have appeared in an article which was published within a day of the shooting could have contained any information capable of undermining defendant's later self-defense claim. We find no clear error in the trial court's factfinding in this regard.

As to the second juror, the trial court had no reason at all to conduct an evidentiary hearing. At most, the testimony from Juror Brown established that after the verdict, the second juror stated that he was going to conduct a Google Earth search. But as the trial court noted, "there's nothing wrong with doing research after the jury's verdict." Defendant's argument that it was incumbent on the trial court to conduct an evidentiary hearing at which that the second juror and the remaining jurors would have testified is a non-sequitur. In any trial, the mere fact that a juror conducted an improper search, which that juror did not disclose to anyone, does not in any way make it more likely that a different juror conducted another, different, improper search. And while it may have been within the range of reasonable and principled outcomes and thus permissible for the trial court to have conducted such a broader evidentiary hearing, there were no facts which mandated that the trial court proceed in that manner. Indeed, defendant's argument that there was only one proper way for the trial court to proceed, i.e., requiring all jurors to testify, would impose a standard

---

[3] The trial court never made express findings of fact regarding Juror Brown's credibility, but seems to have accepted it as truthful; the trial court alternatively found that even if Juror Brown's Google search had revealed more information than that to which the juror testified, that fact could not have affected defendant's claim that he acted in self-defense. We find no basis for reaching a different conclusion than did the trial court regarding Juror Brown's credibility. See MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."). The fact that we defer to the trial court's credibility determination should not be taken in any way as an minimizing the seriousness of a juror disregarding a court's instruction not to conduct outside research, even preliminary or cursory research.

of review other than abuse of discretion, as by definition an abuse of discretion standard "acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Babcock,* 469 Mich. at 269. Nevertheless, our review is for abuse of discretion, *Messenger*, 221 Mich App at 175, and properly so, given the broad and varied range of claims of improper extraneous influences on a juror or jurors which can arise during a trial. For the reasons stated, we find no such abuse of the trial court's discretion.

## III. CHARACTER EVIDENCE

Defendant next argues the trial court denied him the right to a fair trial when it declined to admit into evidence all of his proffered photographs. According to defendant, these photographs were necessary to bolster his self-defense argument because they depicted the victim holding a variety of firearms while standing with members of the Zone 8 gang, evidencing the victim's character trait for violence. We disagree.

## A. STANDARD OF REVIEW

"[W]e review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

## B. LAW AND ANALYSIS

"Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." MRE 404(a). There are, however, exceptions to this general rule—in particular MRE 404(a)(2), which states in pertinent part, "[w]hen self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused" is admissible. Additionally, MRE 405(b) permits a defendant to offer specific instances of conduct by the victim in support of a claim of self-defense. See *People v Harris*, 458 Mich 310, 319; 583 NW2d 680 (1998).

Even so, these rules are not completely unconstrained. "Although the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (quotation marks and citation omitted). Indeed, evidence admitted at trial must still be both relevant and not unfairly prejudicial. See *People v Sharpe*, 502 Mich 313, 331; 918 NW2d 504 (2018). Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Furthermore, under MRE 403, a trial court exercises its discretion "in deciding how much of this evidence to admit." *People v Taylor*, 195 Mich App 57, 61; 489 NW2d 99 (1992).

Defendant disagrees with two decisions by the trial court. First, defendant asserts that the trial court should have permitted photographs of the victim "brandishing large firearms, i.e. assault rifles"—information that purportedly would have bolstered defendant's self-defense claim. Second, defendant believes the trial court should have admitted photographs of the victim "standing in groups of people," evidencing the victim's involvement with and participation in the Zone 8 gang, which would have allegedly showed the victim's violent character. We address each argument in turn.

We initially point out the misleading nature of defendant's argument that the trial court should have allowed into evidence photographs of the victim holding various firearms. Specifically, defendant argues that "the trial court's rejection of the photos; [sic] character evidence prejudiced the [d]efendant's ability to present a complete defense." In making this point, it seems defendant asserts that the trial court excluded *all* of the proposed photographs. In reality, the trial court admitted three of defendant's proposed exhibits—two of which were admitted in redacted form. Therefore, the issue for this Court on appeal is not whether the trial court improperly excluded *all* of defendant's photographs depicting the victim holding weapons, but whether the trial court improperly omitted *some* of the proffered photographs.

In considering defendant's argument, we reiterate that a trial court exercises its discretion "in deciding how much of this evidence to admit." *Id*. And, a trial court need not admit evidence that is needlessly cumulative. MRE 403. It seems in admitting some photographs and not others, the trial court merely exercised its discretion to exclude needlessly cumulative evidence. On appeal, defendant provides no explanation as to why the omitted photographs should not be classified as cumulative. On this record, there is no evidence showing that it was an abuse of discretion to omit some of the photographs showing the victim holding firearms.

We now turn to defendant's second argument that the trial court improperly excluded photographs of the victim standing with Zone 8 gang members. In contrast to the photographs of the victim holding firearms, defendant's second issue seems to rest on the prejudicial nature of the photographs rather than their cumulative value. The trial apparently excluded the photographs of the victim standing with gang members on the basis that (1) any evidence regarding the victim's involvement in the Zone 8 gang was "very prejudicial" because it could lead to the inference that the victim himself was a gang member; and (2) photographs depicting other individuals were prejudicial and not relevant to the issue of the victim's violent reputation.

Defendant argues that the trial court's decision denied him the right to a " 'complete' defense and a fair trial." What defendant's argument fails to explain is *why* the photographs of the victim standing with Zone 8 gang members was not prejudicial. Our Supreme Court has previously held that evidence of gang membership is inherently prejudicial because it creates the risk that a jury will reach the impermissible conclusion that a person "acted in conformity with [his] gang membership with regard to the specific crimes in question." *People v Bynum*, 496 Mich 610, 630-631; 852 NW2d 570 (2014). Defendant apparently sought to introduce evidence of the victim's gang affiliation for this exact purpose—to demonstrate that the victim was a member of the Zone 8 gang and Zone 8 members are known to be especially violent—and, therefore, the victim acted in conformity with this violence on the day in question. The trial court, recognizing this problem, excluded any reference to the Zone 8 gang. Here, in the absence of any alternative explanation by

defendant, the trial court did not abuse its discretion when it excluded from evidence any reference to the Zone 8 gang.

As a final note, we point out that the trial court's exclusion of the photographs of the victim with Zone 8 gang members did not deny defendant the opportunity to present other relevant evidence pertinent to his self-defense argument. As already noted, defendant was able to present some photographic evidence of the victim holding firearms and a redacted group photograph. Further, defendant was allowed to testify about the victim's history of violence and possession of weapons.

In summary, defendant was not denied his constitutional right to a fair trial when the trial court refused to admit into evidence all of defendant's proffered photographs.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant argues the evidence was insufficient to convict him of second-degree murder because he acted in self-defense when he shot the victim. Specifically, defendant believes the prosecution failed to adequately prove the element of malice. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews a challenge to the sufficiency of the evidence de novo." *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014), overruled in part on other grounds by *People v Reichard*, 505 Mich 81, 89 n 18, 96 (2020). "Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime." *Bailey*, 330 Mich App at 46. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Henderson*, 306 Mich App at 9. Finally, issues of statutory interpretation are reviewed de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).

## B. LAW AND ANALYSIS

The elements of second-degree murder are: "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (quotation marks and citation omitted). "[M]alice can be inferred from the use of a deadly weapon." *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004).

"In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990). "A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his action." *Id*. at 503. To prove self-defense, a defendant must introduce sufficient evidence from which the jury could have concluded that the defendant "honestly and reasonably believed that [his or her] life was in imminent danger and that it was necessary for [him or her] to exercise force to protect [himself or herself]." *People v Dupree*, 486 Mich 693, 697; 788 NW2d 399 (2010). If a defendant raises the issue of self-defense, the defendant must "satisf[y] the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist [and then] the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted).

Self-defense is only justified where it is necessary to avoid danger—that is, a defendant should "try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002). However, "a person is never required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." *Id*. The Self-Defense Act (SDA), MCL 780.971 *et seq.*, "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Dupree*, 486 Mich at 708. Specifically, MCL 780.972(1) provides, in pertinent part:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .
>
> > (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

On appeal, defendant correctly asserts that "malice can be inferred from the use of a deadly weapon." *Bulls*, 262 Mich App at 627. In making this assertion, it seems defendant believes the prosecution met its initial burden to prove all the elements of second-degree murder beyond a reasonable doubt. Defendant does not dispute that he used a gun to kill the victim. Instead, defendant's dispute on appeal rests on his self-defense argument. That is, according to defendant, he presented sufficient evidence to prove that he acted in self-defense when he shot the victim. At the same time, defendant apparently argues that the prosecution's circumstantial evidence to the contrary did not successfully "exclude the possibility of self-defense beyond a reasonable doubt." *Stevens*, 306 Mich App at 630. Because the prosecution did not successfully disprove defendant's theory of self-defense, defendant argues, the evidence was insufficient to prove the malice element of second-degree murder. Resolution of this issue requires us to consider the conflicting facts of this case.

Initially, we point out that there were several facts about the altercation between defendant and the victim about which both sides agree. First, there were size differences between defendant and the victim—defendant was approximately 5 feet, 4 inches tall while the victim was approximately 6 feet, 2 inches tall. Second, the evidence established that there was an existing disagreement between the two men. Third, that the victim got out of Dawkins's vehicle while it was still in motion and approached the victim on the porch. And finally, the evidence showed that defendant pushed the victim away as he approached.

However, there are several points at which the evidence conflicted. First, there was the victim's demeanor as he approached defendant. The prosecution presented testimony from witnesses who opined that the victim did not behave aggressively as he exited Dawkins's vehicle and approached defendant. This stands in contrast to defendant's testimony that he believed the victim "was about to kill [him]." Additionally, the jury viewed surveillance footage that showed the victim exiting the car and walking toward defendant and possibly video footage of the shooting itself. The prosecution elicited testimony that the victim did not possess a firearm or weapon as he approached defendant. Although defendant testified that he thought the victim was armed, he also testified that he "didn't see [the victim] with a gun but I know where he carries his gun." There also was conflicting testimony about the nature of the shooting itself. The prosecution presented testimony and evidence that the victim was shot 13 times and at least one of the bullets struck him in his back. Defendant testified that he was unsure in which part of the body his bullets hit the victim because defendant's eyes were closed, but that defendant believed he only shot the victim three times.

As noted, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. Viewing the evidence in the light most favorable to the prosecution, there was ample evidence for a rational trier of fact to find, beyond a reasonable doubt, that the victim did not aggressively approach defendant, that he was not armed, and that he was shot at least one time in the back.

The self-defense doctrine only protects a defendant who was faced with *imminent* death. MCL 780.972(1). While both sides agree that the victim was physically larger than defendant and that defendant pushed the victim back in an apparent attempt to get away from the victim, there was ample evidence for a rational trier of fact to find, beyond a reasonable doubt, that defendant shot an unarmed, nonaggressive person. Thus, viewing the evidence in the light most favorable to the prosecution, as we are required to do, defendant's assertion that the evidence was insufficient to prove malice has no merit.

## V. CONCLUSION

The trial court acted within its discretion in denying defendant's motion for an evidentiary hearing regarding the jurors, and in denying defendant's motion for new trial. The trial court also

-11-

acted within its discretion in admitting the challenged photographs. Finally, there was sufficient evidence from which the jury could conclude, beyond a reasonable doubt, that defendant did not act in self-defense. Consequently, we affirm defendant's convictions.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto