*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

              Plaintiff-Appellee,

v

RECONDO GLENN VENTOUR,

              Defendant-Appellant.

FOR PUBLICATION
December 28, 2023
9:00 a.m.

No. 363922
Wayne Circuit Court
LC No. 20-002844-01-FC

Before: LETICA, P.J., and O'BRIEN and CAMERON, JJ.

CAMERON, J.

Under an aiding and abetting theory, defendant was convicted of second-degree murder,[1] MCL 750.317, but was acquitted of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. Defendant was sentenced to a prison term of 22 to 40 years. On appeal, he challenges his conviction and disputes the trial court's sentencing calculation. In terms of sentencing, he claims the trial court incorrectly assessed him points for offense variable (OV) 1 (aggravated use of a weapon) and OV 2 (lethal potential of weapon possessed or used). He believes that the trial court's calculation of these OVs is contrary to our Supreme Court's opinion in *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019).

As a matter of first impression, we consider whether a trial court may increase a defendant's sentence on the basis of a codefendant's conduct where the defendant would have been assessed the same number of points had the defendant been convicted of a charged offense. We hold that under these circumstances, an increase is permissible so long as the calculation is solely based on a codefendant's conduct and not charges for which a defendant was acquitted. We therefore affirm defendant's conviction and sentence.

---

[1] Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), but the jury found him guilty of the lesser included offense of second-degree murder.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises from the shooting death of the victim outside a Detroit gas station in July of 2019. Defendant and the victim were involved in a confrontation earlier in the day. Defendant was at the gas station when the victim pulled up to a gas pump. Defendant then phoned codefendants Dekarie Kennedy and Kayjuan Glover-Smith and laid in wait until they arrived. Minutes later, his codefendants arrived with handguns. Defendant was not armed. Defendant hit the victim while his codefendants, holding handguns, surrounded the altercation. As the victim began running away, Kennedy and Glover-Smith shot and killed the victim in the street. Defendant fled to West Virginia, where he and Kennedy were arrested in November 2019.

During trial, the prosecution played for the jury surveillance footage showing the encounters between defendant and the victim. Defendant was convicted as noted. In fashioning defendant's sentence, the trial court reasoned:

I do appreciate . . . your accepting responsibility for what happened, and your sympathy for [the victim's] family.

* * *

I do appreciate those words, and I hope that [the victim's sister] and her family can, at some point in time . . . reconcile your apology with the fact that they have forever lost their brother.

* * *

Mr. Ventour, I have reviewed the presentence report.

* * *

I'm aware of the guidelines.

And obviously, I had the benefit of presiding over your trial.

And what I saw, in terms of evidence, and what I saw, in terms of the video that was played, on many angles . . . on many occasions, was shocking to me.

It was, it was a murder, certainly not in broad day light, in the evening hours.

But you participated in the murder of a young man . . . that was witnessed by a large number of people.

And we're here today about your sentence, and we're here about justice for the [victim's] family.

* * *

[M]any people witnessed this.

And it had to have shocked them as much as it shocks the Court.

And it is so sad, because we see the news, and we read in the newspaper [sic], sadly, on almost a daily basis, of people getting shot and killed in the City of Detroit, which just tarnishes the City, and it tarnishes the good work of so many people that are trying to make our City better.

But what can you say about people that conspire to kill a young man, uh, in such a way that it, it's just seen by everybody.

It's shocking.

And it's disgusting.

And it is crystal clear that you were the precipitator . . . and the word master mind, and the conductor, of everything that happened that day.

You were beat up, and offended.

And that lead [sic] you to contact two friends, your brother, the person you called your brother, and the person you called your cousin, to come and murder [the victim].

You were walking, and strutting around that gas station, with the telephone to your ear, clearly orchestrating those people to come, to settle a score, on your behalf.

Shocking.

Absolutely shocking.

And when you say you didn't want this to happen, I don't believe for a minute, and I don't think the jury would believe for a minute, that you didn't know those two guys were coming with guns.

And, when they drew their weapons, and were standing there, imposingly, holding their guns, you could have done something about it.

You.

You could have said, put your guns away.

I'm gonna fight this person, or let's all three fight this person, this person, but you just let them brandish their weapons.

And Mr. Kennedy, uh, extinguished [the victim] in the middle of the street.

You could have stopped it.

And you should have stopped it.

And when you say, you didn't want it to happen, your actions, on that day, are totally at odds with what you're telling the Court, today.

And then you fled.

You ran away to . . . West Virginia.

Because you knew what you had done.

I'm somewhat surprised . . . that you were not convicted of first[-]degree murder.

But I . . . appreciate the jury's . . . finding you guilty of second[-]degree murder.

And you probably know that, if they had convicted you of first[-]degree murder, you'd be going to prison, and you would never come out.

You're twenty-four.

You would, you would die there.

But . . . I respect the finding of the jury.

Uh, Mr. Ventour, I've received some letters from your loving Aunt Phyllis.

I've received a letter from Richard Corona, and reviewed the letter.

I've received a letter, on your behalf, from . . . Albert Ventour.

These are people that know you, and love you.

And you've damaged their lives.

You've ruined your life, and you've ruined [the victim's] life, and that of his family.

And it is such a tragedy, that's so needless.

So needless.

Mr. Ventour, with respect to your conviction for second[-]degree murder, it is the sentence of this Court that you are to serve no less than twenty-two years, and . . . no more than forty years in the Michigan Department of Corrections.

Your sentence will reflect your jail credit of seven hundred and fifty-six days.

Uh, frankly, I will tell you, that had I been able to sentence you to twenty-three years, which is the number of years that Mr. Kennedy is going to serve in prison, I would have sentenced you to twenty-three years.

But . . . twenty-three years is in excess of the . . . the guidelines.

Your sentence will also require you to pay four thousand eight hundred and twenty-five dollars to [the victim's sister], as restitution for the funeral and burial expenses for her brother.

Your sentence will require you to pay sixty- eight dollars in State costs; a crime[-victims'] assessment of a hundred and thirty dollars; and four hundred dollars for an attorney fee.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence to establish that he aided or abetted the codefendants to sustain his conviction of second-degree murder. We disagree.

## A. STANDARD OF REVIEW

We review de novo a challenge to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. LAW AND ANALYSIS

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). At trial, the prosecutor argued that defendant was guilty of second-degree murder under an aiding and abetting theory. A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39. "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant [either] intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement," *People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001) (citation omitted), "or, alternatively, that the charged offense was

a natural and probable consequence of the commission of the intended offense," *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006).

" 'Aiding and abetting' describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime . . ." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (citation omitted); see also *People v Rockwell*, 188 Mich App 405, 411-412; 470 NW2d 673 (1991). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v Lawton*, 196 Mich App 341, 352; 492 NW2d 810 (1992). An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, and the defendant's participation in the planning or execution of the crime. *Carines*, 460 Mich at 757; *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

Here, there was sufficient evidence presented at trial demonstrating defendant was guilty of second-degree murder under an aiding and abetting theory. Specifically, there was evidence that codefendants Kennedy and Glover-Smith, who each shared a close relationship with defendant, committed the crime of second-degree murder by shooting the victim multiple times, causing his death. This satisfies the requirement that "the crime charged was committed by the defendant or some other person." *Izarraras-Placante*, 246 Mich App at 495.

There was also sufficient evidence that defendant performed acts or gave encouragement that incited the codefendants to shoot the victim. *Id*. Defendant summoned Kennedy and Glover-Smith to the scene upon realizing that the victim, who had attacked defendant approximately two hours earlier, was also at the gas station. Defendant acted in concert with the codefendants—who arrived together and who were clearly armed—when he came out of hiding and the three men moved together toward the victim's SUV. The evidence further showed defendant coordinated the joint ambush of the victim when he first approached the driver's side of the victim's SUV and directed Glover-Smith to go to the passenger side, which Glover-Smith did, as Kennedy approached the front of the vehicle. Defendant attacked the victim through the driver's side window as Glover-Smith entered through the passenger side and Kennedy stood in front of the victim's SUV. Defendant further squared off to fight the victim, after the victim was out of his SUV, posturing while the armed codefendants closely flanked the victim as he walked backward. Finally, defendant continued posturing as the victim turned to run and Kennedy shot the victim multiple times.

These facts also permitted a rational trier of fact to conclude beyond a reasonable doubt that defendant either intended to murder the victim, or had knowledge that codefendants Kennedy and Glover-Smith were acting with the requisite malice[2] when he aided and encouraged them to do so. *Izarraras-Placante*, 246 Mich App at 495-496.

---

[2] "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted). Malice may be inferred from facts in evidence and by the use of a

Defendant's challenges on appeal, including what inferences could be drawn from the evidence, are related to the weight and credibility of the evidence, and were issues properly left for the jury to resolve. *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). The jury considered surveillance footage that showed defendant hiding from the victim before his codefendants arrived and his conduct after they arrived. The jury also heard testimony regarding the victim's alleged assault of defendant earlier that day, as well as testimony about defendant's close relationship with his codefendants. The jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and this Court will not interfere with the jury's role of determining issues of weight and credibility. *People v Baskerville*, 333 Mich App 276, 282-283; 963 NW2d 620 (2020). This Court is also required to resolve all conflicts in the evidence in favor of the prosecution, *id.*, and this deferential standard of review is the same for direct and circumstantial evidence, *Nowack*, 462 Mich at 400. Further, it is well established that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id.* (citation omitted). Here, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant aided or abetted the codefendants in the murder of the victim, and we will not disturb the jury's determination.

### III. PROPORTIONALITY AND REASONABLENESS OF THE SENTENCE

Defendant next argues that his within-guidelines sentence for second-degree murder is unreasonable and disproportionate. We disagree.

### A. STANDARD OF REVIEW

Our Supreme Court has recently held that "defendants may challenge the proportionality of any sentence on appeal and that the sentence is to be reviewed for reasonableness." *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 345491); slip op at 37. "Sentencing decisions are reviewed for an abuse of discretion . . . ." *Id.* at ___; slip op at 4. A trial court abuses its discretion if the imposed sentence is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

### B. LAW AND ANALYSIS

"When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, ___ Mich at ___; slip op at 37. To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id.* at ___; slip op at 36. Factors that

---

deadly weapon. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

Here, the minimum guidelines sentencing range was 162 to 270 months' imprisonment. The trial court sentenced defendant to a minimum term of 264 months, which is within the guidelines range and is therefore presumptively proportionate. *Posey*, ___ Mich at ___; slip op at 37. A defendant may overcome the presumptive proportionality of a within-guidelines sentence by "present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (quotation marks, brackets, and citation omitted).

Defendant argues that his 22-year sentence is disproportionate and unreasonable because it is harsher than his codefendants' sentences. We first note that defendant's codefendants accepted responsibility and took advantage of a plea agreement to second-degree murder. In exchange for their pleas, Kennedy agreed to a 21-year sentence and Glover-Smith agree to a 16-year sentence. Defendant claims that his sentence is especially disproportionate and unreasonable considering that his codefendants were "far more culpable" than him. Indeed, "[a] sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial." *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011). However, a defendant's sentence is not necessarily unconstitutional where it is higher following a trial than had he taken a plea. *Id*.

But here, the trial court's rationale for imposing this sentence does not indicate defendant was penalized for exercising his right to a jury trial. The court's measured statements at sentencing reflect that it had considered the video footage and trial testimony, which provided it with more information about the crime than it would have had if defendant had pleaded guilty. The court expressed that the video evidence, which it observed "on many occasions" and from "many angles" at trial, was "shocking" and "disgusting." And while defendant's within-guidelines sentence was higher than his codefendants' sentences, the court observed that it was "crystal clear" from the evidence that defendant was "the precipitator" and the "master mind, . . . the conductor, of everything that happened that day." The court discussed defendant's actions, which included his "orchestrating [the codefendants] to come, to settle a score, on [his] behalf," "strutting around the gas station," doing nothing "when [the codefendants] drew their weapons, and were standing there, imposingly, holding their guns," and then fleeing the state after the shooting.

The trial court's explanation supports the trial court's imposition of a sentence near the top of the guidelines range, and, along with the fact that the court was privy to all of the evidence presented at trial, discloses the reasons for the different sentences. The trial court was well aware

of the codefendants' sentences, noted that Kennedy, the principal shooter, had received a total prison term of 23 years (21 years for the murder conviction consecutive to two years for the felony-firearm conviction), and stated that it would have sentenced defendant to the same "number of years that Mr. Kennedy is going to serve in prison" if it was within the guidelines range. The court's conduct at sentencing demonstrates that it thoroughly considered the circumstances of the offense and the applicable guidelines range to determine an appropriate penalty. The record does not support defendant's claim that the trial court imposed a harsher sentence to punish him for exercising his right to a jury trial, or that his sentence is disproportionate or unreasonable because it is longer than the sentences received by the codefendants. Defendant has failed to present any unusual circumstances sufficient to overcome the presumption of proportionality.

## IV. SCORING OF OFFENSE VARIABLES

Lastly, defendant challenges the trial court's scoring of two of the sentencing guidelines OVs. Specifically, he argues that because he was acquitted of aiding or abetting his codefendants' possession of firearms, the trial court's scoring of OV 1 (aggravated use of a weapon) and OV 2 (lethal potential of weapon possessed or used), conflicts with *Beck*, 504 Mich 605. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. MCR 6.429(C); *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016). Because defendant did not previously challenge the scoring of OVs 1 and 2, we review these unpreserved scoring challenges for plain error affecting defendant's substantial rights. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018).

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. An error affected substantial rights when it "affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (alterations and quotation marks omitted).

### B. LAW AND ANALYSIS

The question in *Beck* was whether a sentencing court could factor acquitted conduct into its sentencing calculation. 504 Mich at 609. Our Supreme Court answered in the negative, stating: "Once acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. The issue here is whether the trial court violated defendant's due process by assessing points for OV 1 and OV 2 arising from his codefendants' convictions, even though he was acquitted of felony-firearm. The answer to this question is clear. In multiple-

offender cases, points assessed to one offender "shall be assessed" to all defendants.[3] MCL 777.31; MCL 777.32. Therefore, a trial court does not violate *Beck* when an increase to a defendant's sentence is predicated on a codefendant's conduct.

OV 1 considers the aggravated use of a weapon during the commission of a crime. MCL 777.31(1). As applicable here, MCL 777.31(1)(a) directs a score of 25 points if a "firearm was discharged at or toward a human being." OV 2 relates to the "lethal potential of weapon possessed or used," MCL 777.32(1), and five points must be scored if "the offender possessed or used a pistol, . . . ." MCL 777.32(1)(d). The instructions for OV 1 plainly state that "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." MCL 777.31(2)(b). Likewise, the instructions for OV 2 state that "[i]n multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points." MCL 777.32(2).

Defendant is correct that "a sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction." *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020), citing *Beck*, 504 Mich at 609 (a trial court cannot rely on acquitted conduct when imposing sentence).

Contrary to defendant's argument, however, *Beck* does not prohibit the trial court from adhering to the clear statutory instructions for assessing points under OVs 1 and 2. Defendant's acquittal for felony-firearm has no bearing on the trial court's finding that another offender possessed a firearm during the commission of the offense. The evidence demonstrated that this was a multiple-offender case, and that the jury found that defendant was criminally responsible for the victim's shooting death under an aiding or abetting theory. Thus, for purposes of scoring OVs 1 and 2, defendant is one of the multiple offenders in the victim's shooting death. Defendant does not dispute that there was evidence that a firearm was discharged at the victim, or that the codefendants possessed or used a firearm, and defendant acknowledges that both codefendants were assessed 25 points for OV 1 and five points for OV 2 related to the shooting of the victim.

As indicated, for both OV 1 and OV 2, the instructions provide that in multiple-offender cases, if one offender is assessed points, all of the offenders shall be assessed the same number of points. MCL 777.31(2)(b) and MCL 777.32(2). Defendant ignores the plain language of OVs 1 and 2, which, by their plain terms, apply regardless of whether the offender or a co-offender discharged or possessed the firearm, and do not require that the defendant actually possess a firearm or be convicted of possessing a firearm. Under *Beck*, defendant's acquittal of felony-firearm prohibited the trial court from enhancing defendant's sentence for second-degree murder on the basis of a finding that defendant personally possessed a firearm, or aided or abetted a co-offender's possession of a firearm. But the trial court did not score OV 1 and OV 2 on the basis of any such finding. Rather, consistent with the instructions for OV 1 and OV 2, the court assessed points for OV 1 and OV 2 because defendant was a codefendant in a multiple-offender case in which the other offenders possessed and used a lethal weapon and were assessed points for the presence and use of such a weapon. Under these circumstances, the trial court's scoring of OV 1

---

[3] " '[S]hall' indicates a mandatory directive." *People v Lockridge*, 498 Mich 358, 387; 870 NW2d 502 (2015).

and OV 2 was not inconsistent with defendant's acquittal of felony-firearm and does not violate *Beck*. Accordingly, the trial court's 25-point score for OV 1 and five-point score for OV 2 does not constitute plain error, and defendant is not entitled to be resentenced.

Affirmed.

/s/ Thomas C. Cameron
/s/ Anica Letica
/s/ Colleen A. O'Brien